IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-139(2) |
| Plaintiff, | Judge Susan J. Dlott |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS PHONE SEARCH EVIDENCE** |
| JASON FLETCHER, | |
| Defendant. | |

This criminal proceeding is before the Court on Defendant Jason Fletcher's Motion to Suppress Phone Search Evidence (Doc. 22). The United States has opposed the Motion (Doc. 25), and Fletcher replied (Doc. 27). The Court did not conduct an evidentiary hearing on this matter as the material facts are not in dispute. For the reasons that follow, Defendant's Motion is hereby **DENIED**.

I.  **BACKGROUND**[1]

Warren County Court of Common Pleas placed Fletcher on probation following a conviction for importuning a minor in violation of Ohio Revised Code § 2907.07(B). As part of his probation, Fletcher signed Community Control Supervision Rules and Conditions in which he agreed—among other things—to the following provisions:

> I will comply with all orders given to me by my Probation Officer or other authorized representative of the Court, including any written instructions issued at any time during the period of supervision.
>
> \* \* \*

---

[1] As no hearing was conducted, the facts in this order are taken from the Community Control Supervision Rules and Conditions submitted by Defendant Fletcher (Doc. 22-1) and the Affidavit for Search Warrant and Search Warrant submitted by Plaintiff United States (Doc. 25-2).

1

> I agree to a search without warrant of my person, my motor vehicle
> or my place of residence by a Probation Officer at any time.

(Doc. 22-1, PageID 52–53.) In addition, he also agreed to "Sex Offender Special Conditions" in which he promised to have no contact with the victim from his prior offense, no contact with minor children other than his own, and not to possess any sexually explicit material. (*Id.* at PageID 56.) Although the "Sex Offender Special Conditions" form contains options to preclude probationers from using or possessing cameras, video cameras, computers, and other devices which access the internet, Fletcher was not asked to agree to those conditions. (*See Id.*)

On May 18, 2017, Fletcher met with his probation officer. (Doc. 25-2, PageID 75.) During the meeting, the probation officer noticed Fletcher had two phones with him. (*Id.*) When the probation officer informed Fletcher he was going to do a "random check" of the phones, Fletcher acted nervously and began going through one of the phones, a Samsung Galaxy Note 5. (*Id.*) Concerned that Fletcher was deleting files, the probation officer demanded Fletcher hand him the phone, and Fletcher did so. (*Id.*) When the probation officer asked for the password, Fletcher claimed not to remember it. (*Id.*) The probation officer then instructed Fletcher to place his finger on the phone to unlock it via fingerprint recognition, and Fletcher complied. (*Id.*) Fletcher did not agree that the phone could be searched. (Doc. 22, PageID 49.)

When the probation officer began looking through the phone, he saw an image of a female child under the age of 12 near the exposed genitalia of an adult male. (Doc. 25-2, PageID 75–76.) The probation officer turned off the phone and arranged for Fletcher to be arrested for a probation violation. (*Id.* at PageID 76.)

Warren County officials seized the phone, and Detective Brandi Carter obtained a search warrant for the phone. In the Affidavit for Search Warrant, Detective Carter referenced the facts above, including the pornographic image the probation officer saw on the Galaxy Note 5. (*Id.*)

A Warren County Common Pleas Judge issued a search warrant for all information and data in the phone. (*Id.* at PageID 74.) Upon executing the search warrant, Detective Carter found pornographic videos that appeared to have been downloaded from the internet as well as pornographic videos that appeared to have been made using the phone. The videos featured, among other things, Co-Defendant Ciera Richter holding a female toddler while Fletcher molested her. (Doc. 25, PageID 61.)

Fletcher contends that the probation officer's warrantless search of his phone violated his Fourth Amendment right to be free from unreasonable searches and seizures. He further contends that—because the Affidavit for Warrant referenced the pornographic image discovered in the warrantless search—the videos and images Detective Carter found in executing the search warrant must be suppressed as "fruit" of the warrantless search.

## II. ANALYSIS

Fletcher concedes that the probation officer had the right to search his person without a warrant pursuant to his probation conditions. (Doc. 22 at PageID 49.) However, he contends—citing *Riley v. California*, ___ U.S. ___, 134 S.Ct. 2473 (2014)—that the right to search did not extend to the contents of the phones found on his person. (*Id.*)

In *Riley*, the Supreme Court examined whether a warrantless search of a person incident to arrest included the right to conduct a warrantless search of the information on the arrestee's cell phone. The Court concluded that police officers must obtain a warrant before searching the contents of a phone seized incident to an arrest. In applying the traditional "balancing of interests" reasonableness approach, the Court decided that "the interest in protecting officer safety does not justify dispensing with the warrant requirement across the board" because a modern cell phone contains vast quantities of personal information. *Riley*, 134 S.Ct. at 2486.

3

However, the Court specifically clarified, "Our holding, of course is not that the information on a cell phone is immune from search." *Id.* at 2493. "Moreover, even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Id.* at 2494.

The issue, then, is whether to extend the Supreme Court's holding for searches incident to arrest to the search of probationer Fletcher here. That is, does the probation officer's right to conduct a warrantless search of a probationer's person include the right to a warrantless search of the phone found on that person? Like most other courts that have examined this issue, we decline to apply the Supreme Court's holding in *Riley* to the probation context.

The Court was unable to find a controlling case from this Circuit, and neither party identified one. However, most courts have declined to extend the *Riley* holding to probation or parole related phone searches. *See, e.g., United States v. Pacheco*, 884 F.3d 1031 (10th Cir. 2018); *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017); *Pennsylvania v. Murray*, 2017 Pa. Super. 363, 174 A.2d 1147 (2017); *United States v. Dahl*, 64 F.Supp. 659 (E.D. Pa. 2014); and *United States v. Martinez*, 2014 WL 3956677 (N.D. Cal. 2014); *but see United States v. Lara*, 815 F.3d 605 (9th Cir. 2016) (invalidating suspicionless search of probationer's cell phone as unreasonable where the suspected probation violation was missing a probation appointment). These cases rely on fact-specific applications of Fourth Amendment jurisprudence which the Court concludes is necessary in this case, as well.

The Fourth Amendment prohibits "unreasonable searches and seizures" so "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley*, 134 S.Ct. at 2482. "Reasonableness" is evaluated by examining "the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417 (1996).

The Court evaluates a probationer's warrantless search pursuant to a state law under the two-step analysis announced in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164 (1987) and applied in *United States v. Henry*, 429 F.3d 603 (6th Cir. 2005).[2] *United States v. Tessier*, 814 F.3d 432, 433, n.1 (6th Cir. 2016). Specifically, the Court must determine: "first, whether the state policy is reasonable under the Fourth Amendment, and, second, whether the search satisfied the requirements of the policy." *Tessier*, 814 F.3d at 433 (citing *Henry*, 429 F.3d at 608). The state law in question—Ohio Revised Code § 2951.02(A)—provides in relevant part:

> During the period of . . . a felony offender's nonresidential sanction, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, the place of residence of the offender, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest . . . if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of . . . the felony offender's nonresidential sanction.

There is little question that Ohio's statute is reasonable. *See Griffin*, 483 U.S. at 880; *United States v. Goliday*, 145 Fed. Appx. 502, 505 (6th Cir. 2005) (reasonableness finding for statute with nearly identical wording). Indeed, courts have specifically found that "a state policy that requires an officer to have reasonable suspicion in order to search a probationer for violations of probation is reasonable under the Fourth Amendment." *Tessier* 814 F.3d at 434 (explaining the Court's finding in *United States v. Henry*, 429 F.3d 603 (6th Cir. 2005)). As the

---

[2] The Court concludes that there is insufficient evidence that Fletcher agreed to the phone search as a condition of probation. While many sex offenders are forbidden from using or possessing computers or other devices with cameras and internet capabilities, Fletcher was not subject to that condition. *See* Doc. 22-1 at PageID 56. Fletcher contends that he did not agree to a warrantless search of his phone, and the record lacks sufficient evidence to the contrary.

5

Ohio statute at issue here requires the officer to have "reasonable grounds to believe" that the probationer is violating his probation, it is reasonable under the Fourth Amendment.[3]

Having satisfied the first prong of the test, the Court turns its attention to the second prong, i.e., whether the search here satisfied the policy requirements. Pursuant to Ohio Revised Code § 2951.02(A), the probation officer is authorized to search "the person of the offender. . . [and] another item of tangible or intangible personal property." The statute permits a probation officer to search an item of tangible or intangible personal property which, by its plain meaning, would include the Samsung Galaxy Note 5. Thus, the question becomes whether the probation officer had "reasonable grounds to believe" Fletcher was violating his probation conditions or the law.

At the time of the search, Fletcher was on probation for a sexually-based offense involving a minor. His probation conditions forbade him from—among other things—possessing pornography and having contact with minor children other than his own. His probation officer found it noteworthy that he possessed two phones. Once the probation officer indicated an interest in the searching the phones, Fletcher became nervous, denied knowing the passcode for one of the phones, and—most significantly—began going through the phone in what the probation officer believed to be an attempt to delete contents from the phone. At that point, the probation officer instructed Fletcher to hand over the phone and use his fingerprint to unlock it. Once Fletcher had done so, the probation officer saw a pornographic image, stopped the search, and called for Fletcher's arrest.

Fletcher contends that possessing two phones does not support a finding of reasonable grounds to believe he violated his legal obligations. The Court agrees that possession *alone* may

---

[3] "Reasonable suspicion" and "reasonable grounds to believe" are synonymous for Fourth Amendment analysis purposes. *See Goliday*, 145 Fed. Appx. at *3.

not induce reasonable suspicion for an average citizen (although it is a close call for a probationer convicted of a sex offense). However, Fletcher's behavior upon learning of the pending phone search certainly does induce reasonable suspicion. He explained that the Samsung Galaxy Note 5 only operated while connected to a wireless network, began "going through the Samsung Galaxy Note 5 phone nervously" in what the probation officer believed to be an attempt to delete illegal contents, and then denied knowing the passcode for the Galaxy Note 5 device. (Doc. 25-2 at PageID 75.) All of these actions occurred prior to the search and—taken together—support a finding of reasonable grounds to believe Fletcher was violating his legal obligations. These actions satisfy the Ohio statutory requirement, and, therefore, the Fourth Amendment protections afforded to a probationer also are satisfied.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Phone Search (Doc. 22) is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: 4/18/18

Judge Susan J. Dlott
United States District Court