IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:17cr139-2 |
| Plaintiff, | : | Judge Dlott |
| Vs. | : | |
| JASON FLETCHER | : | DEFENDANT'S SENTENCING MEMORANDUM |
| Defendant. | : | |

      Jason was born to people involved with drugs. His father was absent, and his mother was addicted. At an early age he was taken from his mother and placed in foster care. He still has the physical scars from the physical abuse he suffered as a small child. And he apparently had some form of sexual abuse as a small child, based upon the acting out behavior that was observed in him at an early age.

      As a youth and teenager, he was angry and disobedient. Clearly this was related to issues of abandonment and his youthful lack of understanding. He was adopted by a well-meaning couple, but they were no match for his complexity. Around the age of 12, he ran away from home, and wound up being molested by an older man. In their quest to find appropriate counselling for Jason, his adoptive parents sent him to a Christian-based camp in Texas. Likely, the parents were not aware of the abusive mission of this camp, and this abuse left emotional scars with Jason. The experience was significant to Jason, and attached is an article which Jason believes is an accurate portrayal of some of the issues with this camp.

      As a young adult, Jason wound up in prison for an assault (and robbery). While in prison, he got a GED, and completed many courses, including:

- Residential Drug Program – program aid for the drug program
- 2 classes in Victim Awareness
- Grass Roots Violence Propensity Program
- 12 Steps Study Group
- Relapse Prevention Classes
- 3 years of AA / NA one time per week including acting as Chairman
- Exploring Family Systems, 3 sessions
- Stress Management and Relaxation Medication Group

1

- 1 year Dental Lab Technology through Columbus State
- 2 semesters of Urbana University Business – Business Management
- Boots Wilmington College studied Food Safety
- Transitional Control through the Halfway House (CPS at 111 through 115)

In essence, Jason went on a quest for self-awareness, and also kept himself busy and productive. After his release in 2003, he was able to maintain employment; he got into some minor trouble while on post release control, but for the most part he worked. He met his wife in 2003, and they were married in 2010. They have two children. He had no criminal contacts from April, 2006 to February, 2013. During this time, he was living with Jill, at her parent's house, raising his children and working two or more jobs at a time. He showed tremendous empathy and compassion for others. He even instituted "Good Deed Saturday," and required his boys to do a good deed for a stranger prior to doing anything fun for themselves.

Then Jill left him for another. He continued living with Jill's parents and was raising the boys on an informal Shared Parenting arrangement. But the issue of abandonment caught up, and overtook, him. He began a relationship with a neighbor lady who had a teenage daughter. During this relationship, he made inappropriate suggestions to the daughter or her friend, and this resulted in the Importuning charge in Warren County. He also reignited his relationship with Ciera Richter, and through this relationship there came the plan to make the video which is the subject of these charges.

Another truly sad aspect of this event is the situation of the minor victim. The probation report states that she was "abused" by her father. More specifically, this infant was beaten by her father, and suffered broken bones as a result. Her father was sent to prison for seven years, and the absence of this parent was how Ciera wound up babysitting this child. In fact, Jason had previously provided money, groceries and supplies to this child's mother. On the day of this incident, Jason had been told that the child had a cough and needed over-the-counter medicine, which he brought. Jason and Ciera met at a fast food restaurant, went to a location as directed by Ciera, and made the video. Jason and Ciera disagree as to who had the initial idea for this misadventure, but it hardly matters as neither took the steps to stop this and both actively participated. The video was brief, and while described in the presentence report as "abuse," the abuse was limited to taking the video itself, and a very brief touching of the labia.

2

There is no evidence that Jason shared this video with anyone other than Ciera; there is no allegation that he posted this on-line or otherwise distributed this video. He did view the video himself. When the phone was confiscated, most of the "still" images were from this video.

After the phone was confiscated, Jason was interviewed by investigators and provided useful information to them. This interview was the subject of a Motion to Suppress, which Motion was conceded by the Government, so this Court may not have reviewed this statement. Jason admitted his involvement, described the incident, and identified Ciera. He was charged in State Court in Warren County, Ohio for possession of child pornography and sentenced to consecutive sentences totaling 10 years.

Since his arrest and continuous incarceration, Jason has maintained regular contact with Jill and his children. His children are truly disappointed with their father. Jason continues to provide emotional support to Jill, and to his children. Jill's letter is attached, along with the letter from Melissa Calvert, a friend.

While the Presentence Report is substantially accurate, Jason takes issues with some of the conclusions in that report. One conclusion is that Jason is not entitled to a reduction of offense points for acceptance of responsibility under Guideline §3E1.1. It is true that Jason did not enter into a Plea Agreement. This was a result of several factors, including his desire to contest the issue of the seizure and search of his phone by a probation officer, which matter is not clearly resolved by the Circuits. An attempt was made to enter into a plea agreement which preserved this issue, or to enter a plea to the Indictment, but those procedures involved some bureaucratic hurdles which were problematic. So he entered into Stipulated Facts with the United States, and there was a very brief "trial," which arguably took less judicial time and resources than a plea colloquy. The Application Notes to this Guideline section, at 2, states,

> … Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct.)…

The Presentence Report indicates that Jason disputes some "aspects" of the allegations; however, he does not and did not dispute the essential elements of the crime, and the Trial on Stipulated Facts was conducted in a timely fashion, with notice to the Court and without the

3

necessity of witness subpoenas, jury selection or extensive procedural delays. Application Notes, 1(A) states:

> …Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

As for the disputed "aspect," the Government apparently has some information that the over-the-counter medicine was part of this plan; but the only people involved in this plan are Jason and Ciera. There is no third-party or independent source to verify this allegation; Jason does not dispute that medicine was given; he disputes the allegation of the purpose for this medicine.

At paragraphs 31 and 32, an additional 4 points under Guideline §2G2.1(b)(2)(B) for the allegations that Jason brought "medicine" to the house to be administered to the minor child to render her unconscious. Jason does not believe that was the purpose of the medicine. The minor victim was very young, and the concept of using medication to "render another person unconscious" or "substantially impairs the ability of that other person to appraise or control conduct" would simply not apply.

Another disputed conclusion is the addition of points at paragraph 35 for the minor victim being an "infant or toddler" and the addition of points at paragraph 32 for the minor victim being under the age of 12 years. Nowhere are the terms "infant" or "toddler" defined, and there is no logical reason as to why this "double counting" should occur.

Another disputed conclusion is whether the conviction for State court Possession of Child Pornography should be included in the calculation of prior criminal history. Under Guideline §4A1.2(a)(1), a "prior Sentence" means any sentence previously imposed … for conduct not part of the instant offense." Guideline §4A1.2(a)(2) also allows the Court to determine if multiple prior sentences should be counted as separate or a single offense. In this case, the conduct of this defendant is similar to the conduct for which he was charged in Warren County, Ohio, and arose from similar circumstances. Jason was arrested on May 18, 2017; he gave statements on that day, and on May 19 and May 25, 2017; his phone was searched on May 24, 2017; he was

Indicted in Warren County, Ohio, on September 11, 2017 and he entered his plea on November 7, 2017 and was sentenced that day.

The Federal Government then Indicted Jason in this matter on December 6, 2017. The information used to charge this Defendant in this matter was known to the Government prior to the conviction in the State Court. Jason's phone had been searched and Jason had provided investigators all of the essential information about this matter. He described the manner in which this incident occurred and the participants. He was not able to articulate where it occurred, as this was a location which was not chosen or otherwise known to him. The Federal Government knew that there were State charges, and the Federal Government waited until after Jason's conviction and sentence to bring these Federal Charges. There may be reasons for this delay; or not. But what is clear is that, at the time that Jason engaged in the conduct that is basis for this Federal charge, he was not charged, or indicted or convicted of the State Court charges of possession of Child Pornography. The State Court Indictment alleges that Jason possessed child pornography on May 18, 2017; and the Indictment in this matter alleges that he produced child pornography in February, 2017. On Jason's phone, the device automatically created a still shot photo, or "thumbnail," for file directory purposes. It is likely that some, or all of the State charges are for the same event / child as in this Federal indictment. Regardless, it is clear that the charges are related, and if they do not constitute similar conduct, then it would be accurate to deem the conviction of these State Charges to be an overstatement of Jason's actual criminal history.

Jason's prior Assault felony may also be viewed or overstating his criminal history. The event occurred in 1996, over twenty years ago. That event was the crescendo of his angry youth. He clearly demonstrated that he could function in society, be compassionate, and help others after that incarceration.

This case calls for a mandatory minimum sentence of 15 years. The Guideline Commission has recently shown that in this area of child pornography criminal law, persons who are charged under statutes with mandatory minimum sentences receive significantly higher sentences than defendants charged for similar conduct under statutes with no mandatory minimum sentences. See <u>Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System</u>, January, 2019. While dealing specifically with possession charges, and not production charges, the conclusion is clear that persons charged under statutes which carry

mandatory minimum sentences receive harsher sentences than those who are charged under different statutes, although conduct is similar.

In addition, child pornography penalties are widely thought to be out of proportion to reasonable sentences for the alleged conduct. An example is found with the minor victim in this case. She was beaten by her father and suffered broken bones. Then she was used for an inappropriate video by Jason and Ciera. Jason's actions were illegal, inappropriate, and should be punished. But, without being excessively graphic, what Jason did to this minor child in this video is not the worst thing which could have been done or photographed with this child. Also, compared to broken bones, the harm to the minor victim by Jason pales; it is impossible to know if the minor victim even recalls this event, given her young age and the lack of any significant physical contact. Jason, as an adult, would be in position of responsibility with respect to this child, but he was not in the position of trust that her father was when he broke her bones. This does not forgive Jason's conduct. But her father's punishment was seven years.

There are several cycles at play in Jason's life. The cycle of abuse which he received as a child seems to have permeated his adult life. His feelings of abandonment which he feared as a child are now visited upon his own sons due to his incarceration. Jason has demonstrated an ability to grow; and an empathy and compassion for others. He is 41 years old, and will be over 50 years old when he completes his existing State Court sentence. Once he completes a period of incarceration from this Court, he will have an extensive period of Supervised Release.

Jason would request the Court consider the mandatory minimum sentence of 15 years to be adequate, and for such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Ty L. Foster
Ty L. Foster        (0043316)
Attorney for Defendant
30 Garfield Place, Suite 600
Cincinnati, OH 45202
Telephone:    (513) 421-4855
Fax:    (513) 684-9701

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Ty L. Foster
Ty L. Foster         (0043316)
Attorney for Defendant

TLF/Fletcher, Jason/Defendants Sentencing Memo