UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

- v. -

JASON FLETCHER,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17 Cr. 139 (SJD)

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in advance of the defendant's sentencing, which is scheduled for February 20, 2019, at 10:00 a.m. For the reasons outlined below, the Government submits that the defendant is subject to a sentence between 35 years to life in prison, and a Guidelines sentence is appropriate.

**BACKGROUND**

**I.    The Offense Conduct**

In February of 2017, Jason Fletcher, the defendant, arranged with his cousin Ciera Richter to come over to Richter's house while she was babysitting her two-year-old niece ("Minor Victim") overnight. Fletcher brought medicine with him over to the house, which he represented was "cold medicine," intended for the Minor Victim. Fletcher and Richter took the Minor Victim to a neighboring Wendy's, where they ate dinner. Fletcher and Richter then returned to the home. Fletcher then poured some of his medicine for the Minor Victim, and Richter gave it to her to drink. Richter then took the Minor Victim to take a bath. Fletcher came into the room while Richter was giving the Minor Victim a bath, and took pictures of the Minor Victim, neck-down, while she was naked.

Richter then got the Minor Victim out of the bath, and carried her to Richter's room.

Fletcher offered her money for sexual access to the Minor Victim. Richter then helped hold, entertain, and move the Minor Victim, while Fletcher filmed himself on his phone touching and rubbing the Minor Victim's vagina. Fletcher filmed multiple videos, including videos where the Minor Victim cried while Fletcher and Richter expressed concern that someone is going to walk in on them during the filming.

Under the influence of the medicine, the Minor Victim fell asleep. After the Minor Victim was asleep, Fletcher filmed additional videos of himself touching her vagina while she was unconscious.

Approximately three months later, Fletcher visited his probation officer for a scheduled visit on his way to sex offender treatment. Fletcher was serving a term of probation in connection with his 2013 conviction for Importuning a Minor. The probation officer noticed that Fletcher had two cellular telephones. The probation officer asked to do a check of the phone, and noticed that Fletcher began behaving nervously and going through one of the phones, as if to delete its contents. The probation officer took the phone from Fletcher and demanded the passcode. Fletcher initially pretended he did not remember it. Finally, he provided his probation officer with the passcode, and the probation officer began to look through the phone. The probation officer saw child pornography, shut down the phone, and contacted a local detective, Det. Brandi Carter.

Det. Brandi Carter got a search warrant for the phone. She found the videos of the Minor Victim, as well as another series of videos recorded on the phone of the defendant molesting a different child while that child slept. She also found child pornography that the defendant had downloaded from the internet.

Because local law enforcement was unable to determine where Fletcher had filmed the child pornography he had created or identify the victim, they did not charge Fletcher with child

pornography production. Instead, they charged him with nine counts of Pandering Sexually Oriented Matter Involving a Minor, covering the child pornography he had downloaded from the internet, and referred the remainder of the investigation to Homeland Security Investigations. On May 18, 2017, Fletcher pleaded guilty to the state charges. On November 3, 2017, Fletcher sentenced to ten years' imprisonment.

Also in November of 2017, HSI finally tracked Ciera Richter and arrested her on a complaint. Richter gave to statement to law enforcement at her arrest.

On December 6, 2017, a Grand Jury in the Southern District of Ohio indicted Ciera Richter and Jason Fletcher with conspiracy to produce child pornography and production of child pornography. Ciera Richter was also charged with sale of a child for the purposes of creating child pornography.

## II. The Defendant's Trial and Guidelines Range

On June 11, 2018, the defendant elected to proceed by bench trial before this Court. The Government and the defendant agreed to stipulated facts, which were admitted as an exhibit at trial. Based on the facts stipulated, the Court adjudged the defendant guilty of Counts One and Two of the Indictment.

Probation has calculated the defendant's Guideline range as follows (see Presentence Investigation Report ("PSR") at ¶¶ 26 – 44):

Count One: 18 U.S.C. § 2251(e) – Conspiracy to Produce Child Pornography

- The United States Sentencing Commission Guidelines Manual ("U.S.S.G."), effective Nov. 1, 2016, applies to this conduct.

- Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is 32.

- Pursuant to U.S.S.G. § 2G2.1(b)(1), because the offense involved a minor who had not attained the age of 12 years, four levels are added.

- Pursuant to U.S.S.G § 2G2.1(b)(2)(B), because the offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a) or (b), four levels are added.

3

> Specifically, Fletcher brought medication for the minor victim in order to render her unconscious and film child pornography.

- Pursuant to U.S.S.G. § 2G2.1(b)(4)(B), because the offense involved a toddler, four levels are added.

Count Two: 18 U.S.C. § 2251(a) – Production of Child Pornography

- Probation found that the Guidelines calculation for Count Two led to the same outcome as the calculation for Count One.

Combined Offense Level

- Pursuant to U.S.S.G. § 3D1.2, because Count One and Count Two involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, they are to be grouped.

- Pursuant to U.S.S.G. § 3D1.3(a), the offense level is the highest offense level of the counts in the group. In this case, both counts produce the same offense level.

Probation calculated the total offense level at 44. PSR at ¶ 44. Because the Guidelines sentencing table is topped at 43, Probation put the total offense level at 43. *Id*. That offense level results in a Guidelines range of life in prison. The Government agrees with Probation's Guidelines calculation.

### III. Mandatory Minimum Penalty

Probation, however, took a different view than the Government as to the statutory penalties Fletcher faces from his conviction. Under 18 U.S.C. § 2251(e), a defendant who has two or more prior federal or state convictions related to the sexual exploitation of children faces enhanced penalties – namely, a statutory penalty of 35 years to life in prison. According to Probation, neither Fletcher's prior conviction for Pandering Sexually Oriented Matter Involving a Minor nor his prior conviction for Importuning qualify under the statute. The Government objected during the preparation of the PSR, and maintains its objection. For the reasons outlined below, the defendant is subject to the maximum statutory penalties under § 2251(e).

4

## DISCUSSION

### A.     The Defendant's Prior Convictions Qualify Under §2251(e)

Title 18, United States Code, Section 2251(e) creates two levels of enhanced statutory penalties where a defendant has prior sex crimes – either 25 to 50 years of imprisonment or 35 years to life. *See* 18 U.S.C. § 2251(e). To qualify for the 25 to 50 year penalty, a defendant must have one prior crime under the chapters of the federal code involving sexual exploitation of children or "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." *Id*. To qualify for the harsher 35 years to life penalty, a defendant must have two or more prior crimes under the chapters of the federal code involving sexual exploitation of children or "under the laws of any State relating to the sexual exploitation of children." *Id*. The category of state crimes that count for the two or more designation—specifically any state crime that relates to sexual exploitation of children—is broader than the category of crimes that qualify for the one prior crime designation. *See United States* v. *Pavulak*, 700 F.3d 651, 674-75 (3rd Cir. 2012). Both of the defendant's prior convictions relate to the sexual exploitation of children, and qualify him for the 35 years to life penalty.

As an initial matter, crimes "relating to the sexual exploitation of children" are broadly construed. The Supreme Court has interpreted the statutory phrase "relating to" to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with [.]" *Morales* v. *Trans World Airlines*, 504 U.S. 374, 383 (1992). The statutory term "sexual exploitation" has also been interpreted expansively:

> [F]or the purposes of 18 U.S.C. § 2251, "sexual exploitation of children" means to take advantage of children for selfish and sexual purposes. Therefore, "sexual exploitation" encompasses all the

5

> behaviors identified in § 2251(e)'s provision regarding a single prior conviction enhancement—that is, "aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, and the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography"—and then some.  Although the statute sweeps broadly, it is readily understandable.

*United States* v. *Mills*, 850 F.3d 693, 697-98 (4th Cir. 2017) (brackets omitted).  Thus, under the statute, if the defendant has committed a crime relating to taking advantage of children for sexual purposes, the defendant qualifies for enhanced penalties.  *See United States* v. *Sullivan*, 797 F.3d 623, 638 (9th Cir. 2015) ("[T]he phrase 'relating to' does not simply mandate a sentencing enhancement for individuals convicted of state offenses *equivalent* to sexual abuse.  Rather, it mandates the enhancement for any state offense that stands in some relation, bears upon, or is associated with that generic offense." (emphasis in original; internal quotation marks and citation omitted)); *see, e.g.*, *United States* v. *Sanchez*, 440 Fed. App'x 436, 440 (6th Cir. 2011).

The defendant's first qualifying conviction was in 2013, when he was convicted of Importuning a Minor.  The Ohio statute reads:

> No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person.

Ohio Revised Code 2907.07(B)(1).  Specifically, the defendant, aged 35, solicited a 13 year-old girl for sex.  This crime clearly relates to taking advantage of children for sexual purposes – the defendant solicited a minor to engage in sex acts with him.  Having sex with a minor is sexual exploitation of a child, and proposing such a thing to a child certainly "stands in some relation, bears upon, or is associated with" that exploitation.

The Eleventh Circuit examined a state statute similar to Ohio's importuning statute and

concluded it qualified as a predicate offense to increase statutory penalties, even under the stricter § 2251(e) standard. In *United States* v. *McGarity*, the defendant had a prior conviction for enticing a minor, which was defined as "enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." 669 F.3d 1218, 1262 (11th Cir. 2012). In the view of that Circuit, the defendant's "discussions of illicit sexual acts with a minor" were "necessarily related to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." *Id*. (internal quotation marks omitted). Thus, an increased statutory penalty under §2251(e) or § 2252A(b)(1) was appropriate, even under the stricter standard of one prior conviction in § 2251(e). *See id*. at 1262-63.

Surely here, Ohio's importuning statute, which specifically criminalizes an adult soliciting a child between the ages of 13 and 16 for sex, qualifies as a state offense that relates to the sexual exploitation of children, a broader category of offense than that considered by the Eleventh Circuit. The defendant's 2013 conviction for Importuning, then, qualifies as a prior conviction under § 2251(e).

The defendant's second qualifying conviction occurred in May of 2017, when he was convicted of Pandering Sexually Oriented Material. That Ohio statute makes it a crime to "knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality." Ohio Revised Code 2907.332(A)(5). It is the state equivalent of possession of child pornography. It thus falls squarely within the definition of a crime relating to the sexual exploitation of children.

Probation, however, concluded that this 2017 conviction did not qualify under § 2251(e). Probation took the view that this conviction was not a "prior conviction" because the offense was uncovered at the same time as the federal offense, regardless of when the defendant was actually

7

convicted of the crimes. *See* PSR Addendum at 29. This view runs contrary to the plain text of § 2251(e) and is incorrect.

Probation erred by overlooking the plain language of § 2251(e) and instead looking to a different and distinct statute to define "prior conviction." Probation looked to 18 U.S.C. § 3559(e), a penalty provision that mandates life in prison for child sex offenders who qualify. *See* PSR Addendum at 29 (discounting the defendant's prior sex crimes citing to 18 U.S.C. § 3559(e)(2)(C)). Under § 3559(e), an offender receives mandatory life in prison if "the person has a prior sex conviction in which a minor was the victim." 18 U.S.C. § 3559(e)(1). The statute specifically defines "prior sex conviction" to mean "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense." *Id*. § 3559(e)(1)(C).

But the provision at issue in this case, § 2251(e), does not reference "prior sex convictions" but instead "prior convictions." The language is purposefully distinct. The Sixth Circuit has recognized this, and made explicit that these penalty provisions carry different requirements:

> So, the mandatory lifetime sentence in § 3559 applies to federal sex offenses against minors and requires that a defendant must have been convicted *and sentenced* for a prior sex offense against a minor before that defendant committed the present sex offense; whereas the 35-year minimum sentence in § 2251 applies to sexual-exploitation offenses and has no prior-sentencing requirement, but requires only prior conviction(s) for prior sex offenses.

*United States* v. *Moore*, 567 F.3d 187, 190 (6th Cir. 2009) (emphasis in original).

"Prior conviction" as it is used in § 2251 is left undefined under the statute, and thus must be given its plain meaning – a conviction entered prior to the instant conviction. Applying this plain meaning, the defendant's conviction for Pandering is a prior conviction; he was convicted of Pandering in May of 2017, prior to his conviction in this instant case in June of 2018. If

8

Congress intended for "prior conviction" to be read any other way, they could have specified as such, as they did for "prior sex conviction" in § 3559(e). This is particularly true when considering that Congress amended both §2251 and § 3559(e) at the same time. *Moore*, 567 F.3d at 191. That Congress chose not to define "prior conviction" in § 2251 leaves us with its logical, plain-language definition.

Probation did not limit itself to reviewing the dates of conviction, but instead speculated as to when the two crimes took place. Probation asserts without evidence that the defendant's child pornography collection from the internet "occurred at the same time" as his conspiracy and production of child pornography. PSR Addendum at 29. That is not correct. While his computer-downloaded child pornography collection was *discovered* at the same time as the child pornography he produced, it does not mean the crimes occurred at the same time. Regardless, even if the crimes somehow did occur at the same time (and neither party asserts such an improbable fact), the state charged and convicted the defendant based on his computer-downloaded child pornography collection before the federal government charged and convicted the defendant of conspiring and producing the child pornography at issue here. That is, by definition, a prior conviction.

It is instructive to look beyond the context of child pornography to understand this plain meaning of "prior conviction." Under 18 U.S.C. § 924(c), for example, a defendant is subject to significantly enhanced penalties for a "second or subsequent conviction" of possessing a firearm in furtherance of a drug crime or crime of violence. Where a defendant is charged in the same indictment with multiple counts of § 924(c), the mandatory minimums of each count "stack," and each conviction of § 924(c) after the first is considered "second or subsequent" and the significantly higher penalty attaches. *United States* v. *Okafor*, 602 Fed. App'x 108, 110 (4th Cir. 2015) (citing *Untied States* v. *Khan*, 461 F.3d 477, 494-95 (4th Cir. 2006)). This is so even

9

when the convictions come down on the same day in the same trial. *Deal* v. *United States*, 508 U.S. 129, 131-37 (1993).

The Supreme Court's guidance with the interpretation of § 924(c) in *Deal* applies with resonant force here. In *Deal*, the petitioner was convicted of multiple § 924(c) counts in the same trial, which stacked and resulted in a 105-year sentence. *Id*. at 130-31. The petitioner appealed, arguing that "second or subsequent conviction" in the statute was ambiguous, and should be interpreted to mean that the entry of final judgment on the first conviction was a necessary predicate to a "second and subsequent conviction." *Id*. at 131. The Supreme Court rejected this interpretation, finding it "unambiguous that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *Id*. at 132. Relevant to our purposes, the Supreme Court contrasted the language of "second or subsequent conviction" with "second offense," which courts have held means that the offense is *committed* after conviction. "The present statute [§ 924(c)] . . . does not use the term 'offense,' so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a *conviction* after the first conviction. There is utterly no ambiguity in that[.]" *Id*. at 135. There is similarly no ambiguity in the plain language of § 2251(e), which requires only a "prior conviction." The defendant was convicted—and sentenced—on his Pandering charge before he was convicted in the instant case. That is a prior conviction under § 2251(e), and when the defendant's crimes occurred or when they were discovered is of no consequence.

The defendant's two prior sex crimes qualify as prior convictions under § 2251(e), and subject him to statutory sentencing range of 35 years to life.

### B. The Defendant is a Serial Sexual Predator

The factors that the Court must consider when fashioning a sentence include the seriousness of the defendant's offense, promotion of respect for the law, and the need for just

punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). All such considerations compel a Guidelines sentence for this defendant.

The nature and circumstances of the defendant's crime are horrific. The defendant approached Ciera Richter, knowing she babysat for her two year-old niece, because she was the broker he needed to get him access to the child he wanted. He offered her money in exchange for sexual access to a two year-old girl. He brought over "medicine," to make sure the toddler would be incapacitated while he took sexual gratification from her. He photographed her naked in the bath, not bothering to show her face. He followed Richter and the child out of the bath and trapped the child in Richter's bedroom. Ignoring the child's cries of distress and her obvious feelings of fear, the defendant filmed himself violating her. Once she was unconscious, he filmed himself violating her again. He wanted to memorialize his harm, so he could repeat it. Each time he watched that video, he victimized the two year-old again. And that was the point. By the time the videos were discovered, they were months old and yet still preserved on the defendant's phone, easily accessible, for his ready enjoyment.

Defense counsel minimizes these harms, claiming "what Jason did to this minor child in this video is not the worst thing which could have been done or photographed with this child." Def. Sub. at 6. He goes so far as to put the word abuse in quotation marks—as if it is in dispute—and claims it was "limited to taking the video itself, and a very brief touching of the labia." Def. Sub. at 2. The defendant deserves no leniency for the fact that his violation of a toddler could have been worse. What the defendant did to this child, and how he memorialized it, cannot and should not be so easily dismissed, so cavalierly minimized, as it is in the defendant's submission. The Government will bring the videos to the sentencing proceeding, and requests that the Court view them. The Minor Victim's tears and distress—before the series of videos where she was unconscious from the "medicine" the defendant gave to her—belie any

11

suggestion that what the defendant did to her is somehow excusable since it is "not the worst thing" this child could endure. And the videos also place in stark relief that the "empathy and compassion for others" that defense counsel claims the defendant possesses, Def. Sub. at 6, is absent when the defendant is pursuing what he wants – while the Minor Victim's cries, the defendant is only concerned that someone will hear and walk in.

If the instant offense were the only crime the defendant committed, the nature and circumstances of the offense alone would justify a Guidelines sentence. But the history and characteristics of this defendant compel it.

This defendant's entire life has been defined by stealing sexual gratification from the most vulnerable. At the age of 13, the defendant "exhibit[ed] sexually perverse behavior, to include peeking into bathrooms and bedrooms to watch others urinate and undress" and cut holes in women's underwear. PSR at ¶ 93. At the age of 15, the defendant was dismissed from a boy's home for unlatching the ceiling and getting into areas to watch women undressing. *Id.* ¶ 92. At the age of 18, the defendant's brother reported to police that the defendant had been sexually abusing him since the age of 11, continuing daily for two years. *Id.* ¶ 94. At the age of 35, the defendant solicited a 13 year-old girl to have sex with him, and was convicted of Importuning and designated a Tier 1 Sex Offender. *Id.* ¶ 56. Also at the age of 35, the defendant masturbated in front of children and was convicted of Public Indecency and Endangering Children. *See id.* ¶ 57. At the age of 38, he had sexual contact with a 13 year-old and was charged with Sexual Imposition – that case is still pending and there is an open warrant for him. *Id.* ¶ 73. And at the age of 40, he not only filmed himself molesting a two year-old he drugged, but he amassed a collection of child pornography from the internet that included videos of adult males having sex with infants and toddlers. *See id.* ¶¶ 12, 15. He also filmed himself molesting a prepubescent child while she slept – a separate and as-of-yet uncharged video series from the

12

videos he created in this case. *See id.* ¶ 11. All of this occurred and kept occurring at the same time that the defendant was receiving various evaluations, counseling, sex offender treatment, and participating in an "empathy program." *See id.* ¶¶ 10, 94, 99, 100, 101, 102. The defendant is an unrepentant, untreatable sexual predator. The public must be protected from him. If the defendant is released from prison, he will sexually abuse children.

A Guidelines sentence of life would provide that protection. Such a sentence would not result in unwarranted sentencing disparities and would not be unreasonable. *See, e.g.*, *United States* v. *Hammonds*, 468 Fed. App'x 593, 600 (6th Cir. 2012) (affirming sentence of life for child pornography offender as substantively and procedurally reasonable); *United States* v. *Cobler*, 748 F.3d 570, 581-82 (4th Cir. 2014) (affirming sentence of 120 years for child pornography producer as substantively and procedurally reasonable); *United States* v. *Sarras*, 575 F.3d 1191, 1219-21 (11th Cir. 2009) (affirming sentence of 100 years for child pornography producer as substantively and procedurally reasonable); *United States* v. *Noel*, 581 F.3d 490, 500-01 (7th Cir. 2009) (affirming sentence of 80 years for child pornography producer as substantively and procedurally reasonable); *United States* v. *Betcher*, 534 F.3d 820, 826-28 (8th Cir. 2008) (affirming sentence of 750 years for child pornography producer as substantively and procedurally reasonable). The sentence would reflect Congress' and the courts' view that production of child pornography is among the most heinous and harmful of offenses, and should be severely punished.

All the relevant sentencing factors demand a Guidelines sentence.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the defendant is subject to a mandatory minimum of 35 years' imprisonment, and a Guidelines sentence in this case is appropriate.

Dated:	Cincinnati, Ohio
	January 25, 2019

>	Respectfully submitted,
>
>	BENJAMIN C. GLASSMAN
>	United States Attorney
>
>
>	By:	/s/Megan Gaffney_____
>		Megan Gaffney
>		Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

  The undersigned attorney, duly admitted to represent the United States before this Court, hereby certifies that on the below date, she caused the Government's Sentencing Memorandum be served on counsel for the defendant electronically.

Dated:  Cincinnati, Ohio
     January 25, 2019

                Respectfully submitted,

                /s/Megan Gaffney_____
                Megan Gaffney
                Assistant United States Attorney